## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                                Case No. 22-cr-51 (DWF/ECW)

        Plaintiff,

    v.                                                **REPORT AND RECOMMENDATION**

Christian DeJesus,

        Defendant.

---

This matter is before the Court on Defendant Christian DeJesus's Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Duplex (Dkt. 38); Defendant Christian DeJesus's Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Motor Vehicle Traking [sic] Warrant (Dkt. 39); and Defendant Christian DeJesus's Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Cell Phones (Dkt. 40).  This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The Court held a hearing on the Motions on July 6, 2023.  (Dkt. 50.)  Leeann Bell, Assistant U.S. Attorney, appeared on behalf of the United States of America ("the Government").  Patrick Cotter appeared on behalf of Defendant Christian DeJesus, who was present at the hearing.

## I.   FACTUAL BACKGROUND

Defendant Christian DeJesus ("Defendant" or "DeJesus") is charged by Indictment with Conspiracy to Distribute Controlled Substances and Possession with Intent to Distribute Controlled Substances, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (Dkt. 1.)  DeJesus seeks to suppress evidence seized as the result of following search warrants:

(1)   GPS tracker warrant for a Range Rover, dealer plate 206XXX, issued on October 21, 2020 (Gov't Ex. 1); and

(2)   Search Warrant for XXXX White Bear Avenue, Saint Paul, MN, 55106 ("White Bear Avenue Residence").  Described as a multi level single family residence owned by Christian DeJesus issued on November 13, 2020.  (Gov't Ex. 2.)

DeJesus asserts that the application for the GPS search warrant (Gov't Ex. 1), which sought evidence of possible violations of Minnesota statutes relating to controlled substance crimes, lacked sufficient probable cause because it was based on conclusory statements by the affiant, including those relating to his experience and training.  (Dkt. 48 at 8-9.)  DeJesus also argues the affidavit contained mostly evidence unrelated to DeJesus regarding third-parties and that his association as a passenger in a vehicle of a target in a drug investigation fails to establish a nexus to the Ranger Rover that is the subject of the tracking warrant.  (*Id.* at 8-9; *see also* Dkt. 39).)

With respect to the application for the White Bear Avenue Residence, the basis for suppression of evidence seized, as will be discussed more fully below, is that the supporting affidavit fails to articulate a substantial basis to conclude evidence of a crime will be found at the White Bear Avenue Residence and on the basis that the four comers

of the supporting affidavit failed to articulate a nexus to a particular unit number for the residence that was registered as a duplex.  (*Id.* at 5-7.)

DeJesus also seeks suppression of evidence obtained as a result of searches of and seizures from cell phones.  (Dkt. 40.)  At the hearing, counsel for DeJesus clarified that the basis of this Motion was that the cell phones seized from the White Bear Avenue Residence are the fruit of the poisonous tree since they were seized as a result of the search warrant for that residence, and that warrant was not supported by sufficient probable cause.

The Government counters that the search warrants are supported by sufficient probable cause and that even if probable cause supporting a search warrant is found lacking on subsequent review, the evidence seized is still not subject to suppression because the officers' reliance on the search warrant was reasonable under the exception set forth by *United States v. Leon*, 468 U.S. 897 (1984).  (Dkt. 46.)

The Court will proceed with addressing each of the search warrants.

## II.    LEGAL STANDARD

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  *See Illinois v. Gates*, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238).  The task of a court issuing a search warrant is "simply to make a practical, common-sense decision

whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  "Placement of a GPS tracking device on a vehicle is a 'search' within the meaning of the Fourth Amendment, requiring probable cause and a warrant." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citation omitted).

Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231).  In reviewing the decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed.  *See Gates*, 462 U.S. at 238-39 (citation omitted); *see also LaMorie*, 100 F.3d at 552 (citation omitted) ("Our duty as a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge.").  As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v.*

*Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

The proponent of a suppression motion on the basis of a Fourth Amendment violation bears "the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## III.   ANALYSIS

### A.   Search Warrant for the White Bear Avenue Residence (Gov't Ex. 2)

On November 13, 2020, Officer Anthony Fletcher applied for a search warrant to search "[XXXX] White Bear Avenue, Saint Paul, MN, 55106.  Described as a multi level single family residence owned by Christian DeJesus."  (Gov't Ex. 2 at 2.)  The application for the search warrant sought a number of items, including: controlled substances, including but not limited to methamphetamine; paraphernalia pertaining to drug distribution; currency; records; firearms; and cellphones, including their data.  (*Id.* at 1.)

The basis for the issuance of the search warrant included the following:

- In the past year Officer Anthony Fletcher ("Officer Fletcher") spoke with the Drug Enforcement Agency ("DEA") in Kentucky who provided information to the DEA in Minneapolis regarding a DTO [Drug Trafficking Organization] operating in Minnesota trafficking hundred-pound quantities of crystal methamphetamine into Minnesota on a monthly basis from out of state sources.  Officer Fletcher learned that the DTO was believed to be smuggling large quantities of currency to Mexico.

- Law enforcement was able to identify phone numbers for members of the DTO who were believed to be operating in Minnesota, including one that was connected to an active drug investigation in Minnesota.

- In November of 2019, law enforcement executed search warrants on members and locations used by this DTO operating in Ramsey County.  Officer Fletcher and other

5

investigators recovered approximately 160 pounds of methamphetamine, currency, firearms, and made multiple arrests.

- During the course of this investigation, Officer Fletcher and other investigators observed a Hispanic male driving Minnesota plate BFRXX and observed him arrive at a known drug stash house in Saint Paul on multiple occasions and go into the stash house carrying a large black backpack, enter for a short period of time and leave in the same vehicle.  Officer Fletcher knew through training and experience that such activity at a known drug stash house often times is related to drug trafficking and/or money laundering.

- Officer Fletcher checked law enforcement databases and learned the vehicle was registered to Manuel Garcia ("Garcia") with an address of XXXX 7th Street East in Saint Paul ("7th Street East Residence").  Officer Fletcher and other investigators were able to positively identify Garcia as the driver of the vehicle.

- Officer Fletcher executed a search warrant on the residence Garcia was observed coming and going from on multiple occasions, which resulted in the recovery of approximately 50 lbs. of methamphetamine, currency, handguns, and multiple arrests.

- A cooperating defendant ("CD") provided information that they knew of a Hispanic male who went by the nickname of "Mano" or "Manuel Garcia", and that this person was involved in the trafficking of large quantities of methamphetamine and moved large sums of currency.

- The CD told law enforcement that Garcia arrived multiple times at the stash house, where he would drop off large quantities of methamphetamine and then take currency from the stash house after the methamphetamine was sold.  Officers showed the CD a photograph of Garcia, and the CD confirmed that was the person they knew as "Mano" or "Manuel Garcia."

- Within the past month, law enforcement learned that a cellular phone number used by Garcia was active and has been identified as being connected to multiple narcotics investigations in the Twin Cities area. As part of this on-going investigation, Officer Fletcher and other officers conducted surveillance at Garcia's residence in Saint Paul and observed Minnesota plate BFRXXX parked near the residence.

- Law enforcement observed Garcia drive to multiple parking lots where Garcia would stop in the parking lots for short periods of time and then leave.  Garcia also made multiple stops at different stops at hotels in the Twin Cities, which law

enforcement knew were being used by the DTO to traffic narcotics. Garcia appeared nervous and was consistently looking around and conducting counter surveillance, which is a tactic in Officer Fletcher's experience that is used by narcotics traffickers to avoid detection. Officer Fletcher believed that Garcia was using the vehicle with Minnesota plate BFRXXX to traffic narcotics and engage in money collection.

- Over the previous several week period, officers conducted surveillance on Garcia and observed him meet with a Hispanic male, later identified as Christian DeJesus ("DeJesus") outside of XXXX Larpenteur Avenue East, Maplewood, Minnesota ("Larpenteur Apartment Complex"). Shortly after picking up DeJesus, the two went to a hotel parking lot and conducted what appeared to be an exchange of a large duffel bag with another male and after that meeting both travelled back to the Larpenteur Apartment Complex where DeJesus was observed getting into a black Range Rover. Law enforcement followed DeJesus to the White Bear Avenue Residence.

- Officer Fletcher learned that DeJesus listed his address on his Minnesota driver's license as "[XXXX] White Bear Avenue, Apt #2, Saint Paul, MN."

- Continued surveillance over the previous several weeks showed that DeJesus resides at the White Bear Avenue Residence and parks his vehicle in the rear of this residence.

- During this same timeframe, DeJesus frequently traveled between the Larpenteur Apartment Complex in Maplewood, with both electronic and physical surveillance confirming DeJesus at this building on many occasions at all hours of the day.

- Officer Fletcher claimed that over the previous two weeks, DeJesus had been traveling with a female identified as Alexis Johnson ("Johnson") who resides in apartment #205 of the Larpenteur Apartment Complex, which is the address listed on her driver's license. Officer Fletcher received the rent roll of the apartment from the management company and found that Johnson is leasing apartment #205 at the Larpenteur Apartment Complex address. According to Officer Fletcher, DeJesus and Johnson had been driving DeJesus' Range Rover while the two conducted "transactions" in alleys and performed countersurveillance maneuvers in the vehicle.

- Officer Fletcher accessed the Ramsey County property tax records website and learned that DeJesus was the owner and taxpayer of the White Bear Avenue Residence.

- Officer Fletcher believed DeJesus and Johnson were using their respective residences to facilitate their drug trafficking.

- Over the previous two-week period, Officer Fletcher and other officers conducted extensive surveillance on Garcia and other members of the DTO.  Officers observed Garcia and other members meet with each other and other unknown persons for short periods of time (less than two minutes) in alleys of Saint Paul and Minneapolis.  After these interactions, Garcia returned directly to his 7th Street East Residence.  According to Officer Fletcher, this activity is consistent with drug trafficking.

- Over the previous 72 hours, Officer Fletcher had spoken with agents at the DEA in Kentucky and learned that members of the DTO in Saint Paul were attempting to launder or smuggle drug proceeds in excess of $140,000.  Fletcher had knowledge that Garcia was the coordinator for the DTO and was responsible for collection and storage of these proceeds until the currency could be smuggled to Mexico.

- On the date of the application for the warrant at issue here, Office Fletcher executed a search warrant at the 7th Street East Residence, seizing a firearm, drug ledgers, and empty kilogram and pound wrappings that contained methamphetamine residue.

- As a result of interviews from persons at this residence, Officer Fletcher learned that large quantities of United States currency and possibly narcotics were delivered to the apartment #205 of the Larpenteur Apartment Complex over the past two-week period by members of the DTO.

- Officer Fletcher observed pictures on a cell phone seized during the search warrant at the 7th Street East Residence of quantities of United States Currency in excess of $250,000 cash that were said to have been delivered to apartment #205 of the Larpenteur Apartment Complex.  The person that received the currency was described and matched the description of DeJesus.

- Based on his training an experience, Officer Fletcher knew that those involved in trafficking of narcotics and currency will utilize multiple locations to avoid detection by law enforcement.

- On the date of the application for the warrant for the White Bear Avenue Residence, Office Fletcher directed a certified drug detection K-9 to sniff the lower door seam of apartment #205 of the Larpenteur Apartment Complex.  The K-9 gave a positive indication for the presence of narcotics odor coming from the apartment.

(Gov't Ex. 2 at 2-6.)

8

On November 13, 2020, Ramsey County District Judge Nicole Starr issued the search warrant for the White Bear Avenue Residence.  (*Id.* at 8-13.)

DeJesus asserts that the supporting affidavit fails to articulate a substantial basis to conclude that evidence of a crime would be found at the White Bear Avenue Residence, because law enforcement did not know the contents of the duffel bag referenced in the affidavit; law enforcement did not see DeJesus take any duffel bag to the White Bear Avenue Residence; there is no evidence that DeJesus ever brought cash or narcotics to this residence; and the mere presence of DeJesus as a passenger with the target drug trafficker, Garcia, did not provide any information sufficient to conclude that there would be evidence of a crime at his residence.  (Dkt. 49 at 5-6.)

Here, the Court finds that the supporting affidavit contains sufficient supporting information to establish probable cause that DeJesus was engaging in narcotics-related activity.  First, Officer Fletcher provided detailed statements about Garcia's narcotics trafficking, including information from a CD that Garcia was involved in large-scale narcotics trafficking, observations of Garcia engaging in what appeared to be drug trafficking and money collections in hotel parking lots, observations of Garcia entering and exiting a known stash house with a large backpack on multiple occasions, and Garcia engaging in what appeared to be countersurveillance maneuvers.  Officer Fletcher also stated that he knew the DTO at issue has used hotels in the past to traffic illegal narcotics. The affidavit also states that Garcia picked DeJesus up outside the Larpenteur Apartment Complex and they travelled together to a hotel parking lot and were observed conducting what appears to be an exchange of a large duffel bag with a male, following which Garcia

9

dropped DeJesus off at the Larpenteur Apartment Complex, where he got into a black Range Rover. Office Fletcher also stated that he learned Johnson resided at the Larpenteur Apartment Complex and that Johnson had been driving the Range Rover while Johnson and DeJesus conducted transactions in alleys and performed counter-surveillance maneuvers in the vehicle. DeJesus argues that there are no facts supporting this conclusory assertion (Dkt. 49 at 6), however, the issuing judge could reasonably infer that law enforcement observed that conduct during their surveillance. *See United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) ("'Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant . . . .'") (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009), quoting *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007)).

The affidavit states that physical and electronic surveillance placed DeJesus on many occasions at all hours of the day at the Larpenteur Apartment Complex and going back and forth between that location and the White Bear Avenue Residence. Further, Officer Fletcher also had information, within the previous 72 hours, that the DTO in Saint Paul was attempting to launder or smuggle drug proceeds in excess of $140,000; that on the date of the affidavit, Officer Fletcher executed a search warrant at Garcia's 7th Street East Residence and seized a firearm, drug ledgers, and empty kilogram and pound wrappings that contained methamphetamine residue. In addition, as a result of interviews from persons at this residence, Officer Fletcher learned that: large quantities of United States Currency and possibly narcotics were delivered to apartment #205 at the Larpenteur Apartment Complex over the past two-week period by members of the DTO,

that a picture of cell phone seized at Garcia's residence showed $250,000 in cash, and

that the person who received the cash matched the description of DeJesus.  "Information

may be sufficiently reliable to support a probable cause finding if the person providing

the information has a track record of supplying reliable information, or if it is

corroborated by independent evidence." *United States v. Morales*, 238 F.3d 952, 953

(8th Cir. 2001) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).  In

determining whether the informant's tip has been corroborated, even innocent activity

can provide sufficient support.  *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir.

2001) (citation omitted).  Moreover, not every detail must be corroborated.  *See United*

*States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995) ("When an informant's information is

at least partially corroborated ... attacks upon credibility and reliability are not crucial to

the finding of probable cause.") (marks and citation omitted); *see also United States v.*

*Finch*, No. 21-CR-157 PAM/ECW, 2022 WL 1110994, at *5 (D. Minn. Feb. 9, 2022), *R.*

*& R. adopted*, 2022 WL 843937 (D. Minn. Mar. 22, 2022) (citation omitted).  Here, the

narcotic detection K-9's positive alert outside of apartment #205 at the Larpenteur

Apartment Complex corroborated the information that possibly narcotics were delivered

to apartment #205 at the Larpenteur Apartment Complex over the past two-week period

by members of the DTO.  In sum, the supporting affidavit adequately connects DeJesus

to narcotics trafficking activity.

      However, the affidavit does not establish any link between narcotics trafficking

and the White Bear Avenue Residence.  Officer Fletcher stated his belief "that Dejesus

and Johnson are involved in the trafficking of large quantities of narcotics and the

collection of large quantities of United States Currency (the proceeds from the drug sales) and are [sic] their residences located at [XXXX] Larpenteur Avenue, #205, Maplewood and [XXXX] White Bear Avenue, Saint Paul, MN to facilitate this activity." (*See* Gov't Ex. 2 at 6.) But the affidavit does not state that any narcotics, paraphernalia, or proceeds were transported to the White Bear Avenue Residence or otherwise link any trafficking activity to that address, such as a statement that DeJesus and Johnson or Garcia departed from or returned to the White Bear Avenue Residence when engaging in the alleged trafficking, a positive K-9 alert, or other indicia that evidence of drug trafficking could be found at that location. The fact that DeJesus left the White Bear Avenue Residence—his residence—and travelled to another location to be picked up by Garcia or Johnson does not create a connection between the White Bear Avenue Residence and evidence of drug trafficking. The White Bear Avenue Residence was simply known to be the address where DeJesus lived.

The Government does not identify any statement in the affidavit linking the White Bear Avenue Residence to evidence of drug trafficking. The Eighth Circuit "ha[s] not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence." *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). However, the Eighth Circuit has "found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." *Id.*; *see also United States v. Cruz-Martinez*, No. 21-

CR-0151 (PJS/ECW), 2021 WL 5827748, at *1 (D. Minn. Dec. 8, 2021) (The Court has sympathy for Cruz-Martinez's argument regarding probable cause—and, were the Court writing on a clean slate, the Court might well agree with it.  But the Court agrees with Judge Wright that, under existing precedent, the affidavit submitted in support of the search-warrant application—including Agent Bill Hudson's statement that, in his training and experience, it is common for those engaged in selling illegal drugs to keep evidence of their crimes in their residences—supplied probable cause supporting the warrant.").  In this case, however, the affidavit contains no statement that based on Officer's Fletcher's training or experience, narcotics would be likely to found at the White Bear Avenue Residence because DeJesus lived there and he engaged in drug trafficking.  Given the Eighth Circuit's rejection of the per se rule, and the absence of any statement linking the White Bear Avenue Residence to drug trafficking (other than Officer Fletcher's statement of belief at the end of the warrant), the Court finds that the affidavit did not create a fair probability that evidence of drug trafficking activities would be found at the White Bear Avenue Residence.

However, the Court rejects DeJesus's argument that the affidavit failed to articulate a nexus to a particular unit number for the White Bear Avenue Residence, which was registered with the State of Minnesota, Ramsey County as a duplex.  (Dkt. 49 at 7; Def. Ex. 1.)  First, as to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United*

*States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)).  The affidavit states that the property records identified DeJesus as the "owner and taxpayer at [XXXX] White Bear Avenue, Saint Paul, MN, 55016."  (Gov't Ex. 2 at 5.)  DeJesus did not seek a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), with respect to the fact that the property is a duplex, perhaps because the affidavit also stated that he resided in "unit 2" of the White Bear Avenue Residence.  (*Id.* at 4.)  The property record offered and admitted as Defendant's Exhibit 1 indicates that he owned the entire premises (Def.'s Ex. 1), and DeJesus has not argued or offered evidence that he did not have access to all portions of the duplex.  Further, the Government has represented that all the evidence seized at issue was from Unit 2 of the duplex or common areas.  (Dkt. 46 at 15-16.)  Therefore, the Court finds no basis for suppression merely because the property was registered as a duplex and this fact was omitted from the supporting affidavit.

The Government also argues that the *Leon* exception applies.  (*Id.* at 16.)  The Court finds that officers' reliance on the warrant was reasonable under *Leon*.

> Under the [*Leon*] good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable.  The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.

*United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (alterations in original) (internal quotations omitted).

*Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid. *Id.* (citation omitted).  With respect to the third exception, the Eighth Circuit explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Proell*, 485 F.3d at 432 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)).

In this case, DeJesus argues that the warrant affidavit here is so lacking in probable cause that no reasonable officer could believe it to be valid because the affiant knew the White Bear Avenue Residence had two units but the warrant did not identify which unit was to be searched and was not limited to unit 2.  (Dkt. 49 at 10.)  As a starting point, the Court has explained why it is not persuaded that the warrant was insufficiently particular in view of the fact that DeJesus was identified as the taxpayer and owner of the entire property.  In any event, "search warrants for a street address which later turns out to include separate residences or apartments have been upheld when the officers have reason to believe it is only a single family dwelling under the control of

15

one person." *United States v. Davis*, 557 F.2d 1239, 1248 (8th Cir. 1977). The Court recognizes that Officer Fletcher knew DeJesus's driver's license identified unit 2 as his residence, but given that Officer Fletcher also knew the property records indicated that DeJesus owned the entire property, which Defendant does not dispute, Officer Fletcher and other law enforcement had a reasonable basis to search the entire premises.[1]

More importantly, the Eighth Circuit has applied *Leon* "even though the affidavit did not present facts to indicate the existence of a nexus between [a] residence and the suspected contraband" because:

> As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence. Given the common sense appeal of this inference, and its acceptance by the issuing magistrate [judge], it was not entirely unreasonable for Officer Shoemaker to believe the inference to be permissible.

*United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir. 2003); *see also United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022) ("We view the failure of Hamilton's affidavit to recite that in his judgment drug dealers often store contraband in their home to be "a technical legal deficiency." *Herron*, 215 F.3d at 814. After the controlled buy, the affidavit recited that officers followed Randle to his home on Vera Cruz Lane. Thus, it was not 'entirely unreasonable' to rely on the warrant providing probable cause to search the home for "valuable contraband" he was storing. The district court did not err in

---

[1]   DeJesus has not articulated how he would have had a reasonable expectation of privacy in unit 1 under this theory.

concluding that the *Leon* good faith exception applies and denying the motion to suppress.").

Given that it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence, based on all the facts and circumstances of this case, it was not "entirely unreasonable" to rely on the warrant providing probable cause to search the home for possible contraband he was storing at the White Bear Avenue Residence. For all of these reasons, the Court recommends denying the motion to suppress evidence seized at the White Bear Residence.

## B. Search Warrant for GPS Tracker Regarding the Black Range Rover - Minnesota Dealer Plate 206XXX (Gov't Ex. 1)

Applicant Jeremiah Jessen, an investigator with the West Metro Drug Task Force, asserted in his October 21, 2020 supporting affidavit for the tracking warrant for the black Range Rover that there was an active investigation of a large scale methamphetamine drug DTO that was active in Minnesota. (Gov't Ex. 1 at 2.)

The search warrant application also provided the following information in support of the issuance of the tracking warrant:

- Investigator Jessen had learned, through drug enforcement agency officers that over the past year, a DTO was operating in Minnesota and was trafficking hundred-pound quantities of crystal methamphetamine into Minnesota monthly from out-state sources, and in turn it was believed that quantities of currency were being transported out of the state to drug sources in Mexico.

- Law enforcement was able to identify phone numbers for members of the DTO who were believed to be operating in Minnesota, including one that was connected to an active drug investigation in Minnesota, and the second number was connected to an active drug and money laundering investigation.

- In November of 2019, law enforcement executed search warrants on one group of the DTO operating in the area of Saint Paul and recovered approximately 160 pounds of methamphetamine, United States currency, handguns, and made multiple arrests during the course of this investigation.

- During this investigation, Investigator Jessen and other investigators observed a Hispanic male driving Minnesota plate BFRXX and observed him arrive at a known drug stash house in Saint Paul on multiple occasions and go into the stash house carrying a large black backpack, enter for a short period of time, and leave in the same vehicle.   Investigator Jessen knew through training and experience that activity such as this at a known drug stash house often is related to drug trafficking and/or money laundering.

- Investigator Jessen checked law enforcement databases and learned the vehicle was registered to Garcia with an address of XXXX 7th St E in Saint Paul.  Investigator Jessen and other investigators were able to positively identify Garcia as the driver of the vehicle.

- Investigator Jessen conducted a search warrant on the residence Garcia was observed coming and going from on multiple occasions, which resulted in the recovery of approximately 50 lbs. of methamphetamine, currency, handguns, and resulted in multiple arrests.

- A CD provided information that they knew of a Hispanic male who went by the nickname of "Mano" or Manuel Garcia, and that this person was involved in the trafficking of large quantities of methamphetamine and moved large sums of currency.

- The CD told Investigator Jessen that Garcia arrived multiple times at the stash house where he would drop off large quantities of methamphetamine and then take currency from the stash house after the methamphetamine was sold.  Investigator Jessen showed the CD a photograph of Garcia and the CD confirmed that was the person they knew as "Mano" or Manuel Garcia.

- Within the last 72 hours, Investigator Jessen learned that a cellular phone number used by Garcia is currently active and has been identified as being connected to multiple narcotics investigations in the Twin Cities area.  As part of this on-going investigation, Investigator Jessen and other officers conducted surveillance at Manuel Garcia's residence in Saint Paul and observed Minnesota plate BFRXXX parked near the residence.

- Investigator Jessen observed Manuel Garcia exit his residence and get inside his vehicle, Minnesota plate BFRXXX.  Investigator Jessen and other investigators followed the vehicle driven by Garcia to an apartment complex in the City of Maplewood and pick up a Hispanic male passenger.

- Investigator Jessen and other investigators observed Garcia and the passenger drive to multiple parking lots and meet with another vehicle.  Garcia would stop in the parking lots for short periods of time and then leave.  Garcia and the passenger also made multiple stops at different hotels in the Twin Cities area. Investigator Jessen knew that the DTO had used hotels in the past to traffic illegal narcotics.

- Investigator Jessen observed: Garcia driving very slowly at times; that he appeared to be nervous, and he was constantly looking around for the presence of law enforcement; and Garcia and the passenger make numerous short-term stops and appeared to be looking around/conducting counter surveillance.  Investigator Jessen knew from his training and experience that driving in such a manner is often times a tactic used by persons involved in illegal activity, specifically drug and money trafficking, which is done to try and avoid detection by law enforcement.

- Investigator Jessen then followed the vehicle driven by Garcia back to the apartment complex in Maplewood.  Investigators were able to get a good look at the passenger and observed the passenger get into the driver's seat of a black in color Range Rover with MN dealer plate 206XXX.

- Investigator Jessen and other investigators followed the black Range Rover to the White Bear Avenue Residence, and surveillance officers observed the vehicle park at the residence next to a second Range Rover with Minnesota Plate BYUXXX.

- Investigator Jessen later learned the second Range Rover was registered to JT Auto Inc. in Savage, Minnesota. Investigator Jessen knew through previous investigations that the subject DTO often times used vehicles registered to auto groups and vehicles with dealer plates/21-day temporary permits, which through his training and experience was done in order to avoid detection by law enforcement.

- Investigator Jessen and other investigators researched law enforcement databases and were able to learn that DeJesus lives at Apt. 2 of the White Bear Avenue Residence, and were able to retrieve a photograph of DeJesus from law enforcement databases. Surveillance officers were able to confirm that DeJesus was the passenger of the vehicle driven by Garcia and later the driver of the black Range Rover.

- Investigator Jessen knew from previous investigations that Garcia works with multiple people inside the DTO.

- Investigator Jessen knew that Garcia drove all the way to Maplewood to pick up DeJesus rather than St Paul (where they both live), which based on his training and experience was done in an attempt to avoid/detect surveillance and to avoid detection by law enforcement. DeJesus did not enter the apartment building in the City of Maplewood, DeJesus immediately entered his vehicle after being dropped off by Garcia and drove directly back to his residence in Saint Paul, which according to Investigator Jessen is often times a tactic used by persons involved in illicit activity.

- Investigator Jessen believed that DeJesus was using a black in color Range Rover with Minnesota dealer plate 206XXX and was using that vehicle to conduct certain aspects of his illicit activity, including drug trafficking and money collection.

(Gov't Ex. 1 at 1-4.)

In issuing the tracking warrant on October 21, 2020, the judge found that based on the information submitted in the application there is "reason to believe that the information likely to be obtained by such an installation and use is relevant to an ongoing criminal investigation into possible violations of Minnesota State Statues pertaining to . . . distribution of a controlled substance. . . ."  (*Id.* at 6.)

DeJesus argues that the information contained within the four corners of the tracking warrant only establishes that the DeJesus rode around as a passenger in a vehicle driven by Garcia, a target in a drug investigation, then was dropped off and got into the subject vehicle with dealer plate 206XXX and drove to his residence.  (Dkt. 49 at 9.) Otherwise, DeJesus contends that the information in the application is conclusory and often refenced Investigator Jessen's training and experience.  (Dkt. 49 at 8-9.)

Here, the application contained information regarding Garcia's involvement with a DTO in Minnesota that was trafficking hundred-pound quantities of crystal

20

methamphetamine into Minnesota monthly from out-state sources and information that quantities of currency were being transported out of the state to drug sources in Mexico, including information about: Garcia coming and going from a suspected drug stash house for short periods of time carrying a large backpack, which in Investigator Jessen's experience and training was consistent with drug trafficking and money laundering; that a search warrant executed on the suspected stash house yielded 50 pounds of methamphetamine, currency, handguns; and that a CD confirmed, after being shown a photograph, that Garcia was involved in the trafficking of large quantities of methamphetamine and moving large sums of currency.

The application also established that in the previous 72 hours, Garcia was seen by surveillance officers traveling from Saint Paul to Maplewood to pick up DeJesus, observed them drive to multiple parking lots and meet with other vehicles for short periods of time and then leave; Garcia and DeJesus also made multiple stops at different hotels in the Twin Cities area, which Investigator Jessen knew were used by the DTO in the past to traffic illegal narcotics; and observed Garcia and DeJesus looking around and conducting counter surveillance in a manner that, in Investigator Jessen's experience and training, was consistent with drug and money trafficking.  Moreover, instead of taking DeJesus to his residence in Saint Paul, which is where Garcia also resided, Garcia took DeJesus to back to Maplewood, where DeJesus got into the target vehicle and drove himself back to Saint Paul.  According to Investigator Jessen, based on his training and experience, this was done in order to avoid detection by law enforcement.

With respect to the vehicle at issue, Investigator Jessen represented that he knew through his experience in investigating the target DTO, that the DTO used vehicles registered to auto groups and vehicles with dealer plates/21-day temporary permits, which he knows through training and experience that this is done to avoid detection by law enforcement.

While DeJesus contends that the application was based on conclusory assertions and Investigator Jessen's training and experience, "probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." *See United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002) (quoting *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999)); *see also United States v. Turner*, 953 F.3d 1017, 1020 (8th Cir. 2020) (finding that probable cause was supported by detective's knowledge through training and experience that drug traffickers use rental cars to transport drugs and money); *United States v. Juneau,* No. 19-CR-274 (WMW/KMM), 2021 WL 806368, at *2, *5 (D. Minn. Mar. 3, 2021) (finding that, based on GPS tracking of defendant's vehicles, the detective reasonably suspected that defendant's visits to a residence—"several of which occurred in the middle of the night and were only several minutes in duration"—were consistent with drug trafficking).  In sum, based on the totality of the circumstances, the affidavit provided sufficient information supporting the conclusion that Garcia was engaging in narcotics trafficking on behalf of the DTO and evidence, based on law enforcement observations and their training and experience, that DeJesus was assisting Garcia with narcotics trafficking; and therefore, that the location of that black Range Rover, which was dealer-plated in the same manner as other vehicles

used by the DTO, was sufficient to lead a reasonable person to believe that there was a fair probability that contraband or evidence of drug trafficking or currency laundering would be found by tracking the location of the Range Rover.  *See Gates*, 462 U.S. at 238.

Because the search warrant was supported by probable cause, the Court need not determine whether the *Leon* good-faith exception should apply.  *See United States v. Burns*, No. 14-CR-0374 (PJS/JSM), 2015 WL 1746485, at *12 (D. Minn. April 16, 2015).  However, even if the warrant lacked probable cause, the Court finds that the officers' reliance on the warrant would have been reasonable under *Leon*.  The Court does not find that the affidavit at issue was intentionally or recklessly misleading, or that the issuing judge wholly abandoned her judicial role in issuing the search warrant.  As to the remaining exceptions, the Court has already concluded that the warrant affidavit provided an adequate factual basis for the issuing judge to have found probable cause. Therefore, based on all the facts and circumstances of this case, it was not "entirely unreasonable" for law enforcement officers to rely on the issuance of the search warrant.

For all of the reasons stated forth above, the Court recommends denying the motion to suppress the tracking warrant for the black Range Rover.

**C.    Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Cell Phones**

As stated previously, DeJesus seeks suppression of evidence obtained as a result of seizures and searches from cell phones on the basis that the cell phones seized from the White Bear Avenue Residence are the fruit of the poisonous tree since the search warrant (for the White Bear Avenue Residence) that led to their seizure was not supported by

23

sufficient probable cause.  Given that the Court has recommended denying the motion to suppress the evidence seized from the White Bear Avenue Residence, *see* Section III.A, the discovery of any evidence from the phones is not the fruit of an illegal search and seizure, *see United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989) (finding that *Leon* sufficiently cured the taint of illegally obtained evidence).  Therefore, the Motion should be denied.

## IV.   RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.     Defendant Christian DeJesus' Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Duplex (Dkt. 38) be **DENIED**;

2.     Defendant Christian DeJesus' Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Motor Vehicle Traking [sic] Warrant (Dkt. 39) be **DENIED**; and

3.     Defendant Christian DeJesus' Motion to Suppress Evidence Obtained as a Result of Search and Seizure from Cell Phones (Dkt. 40) be **DENIED**.


DATED: August 4, 2023                         *s/Elizabeth Cowan Wright*
                                              ELIZABETH COWAN WRIGHT
                                              United States Magistrate Judge

**<u>NOTICE</u>**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).